[Cite as *State v. Marcum*, 2016-Ohio-263.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2015-04-011 |
| Plaintiff-Appellee, | : | O P I N I O N |
| | : | 1/25/2016 |
| - vs - | : | |
| | : | |
| RICKY L. MARCUM, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 14CR11487

Martin P. Votel, Preble County Prosecuting Attorney, Kathryn M. West, Preble County Courthouse, 101 East Main Street, Eaton, Ohio 45320, for plaintiff-appellee

McNamee Law Office, LLC, Matthew J. Barbato, 2625 Commons Boulevard, Suite A, Beavercreek, Ohio 45431, for defendant-appellant

**M. POWELL, P.J.**

{¶ 1} Defendant-appellant, Ricky L. Marcum, appeals his convictions in the Preble County Court of Common Pleas upon multiple sex offenses. For the reasons discussed below, the judgment is affirmed with the exception of Marcum's sentence, which is reversed, and the matter remanded for resentencing.

{¶ 2} The charges stem from allegations made by Marcum's stepson, R.C., and his

son, J.M., that Marcum forced the boys to suck his penis, play with his penis, and play with each other's penis while Marcum watched. Additionally, Marcum threatened to hurt the boys or someone they knew if they did not comply. This occurred when the boys were less than 13 years of age.

{¶ 3}   Marcum was indicted by a grand jury on March 4, 2014, on 12 charges. Based upon allegations that Marcum engaged in sexual conduct with R.C., Marcum was charged in Counts 1 and 2 with rape in violation of R.C. 2907.02(A)(1)(b) and 2907.02(A)(2), respectively, and in Count 3 with sexual battery in violation of R.C. 2907.03(A)(5). Based upon allegations that Marcum had sexual contact with R.C., Marcum was charged in Counts 4 and 5 with gross sexual imposition in violation of R.C. 2907.05(A)(1) and 2907.05(A)(4), respectively. Based upon allegations that Marcum solicited R.C. to engage in sexual activity with him, Marcum was charged in Count 6 with importuning in violation of R.C. 2907.07(A). Based upon allegations that Marcum engaged in sexual conduct with J.M., Marcum was charged in Counts 7 and 8 with rape in violation of R.C. 2907.02(A)(1)(b) and 2907.02(A)(2), respectively, and in Count 9 with sexual battery in violation of R.C. 2907.03(A)(5). Based upon allegations that Marcum had sexual contact with J.M., Marcum was charged in Counts 10 and 11 with gross sexual imposition in violation of R.C. 2907.05(A)(1) and 2907.05(A)(4), respectively. Based upon allegations that Marcum solicited J.M. to engage in sexual activity with him, Marcum was charged in Count 12 with importuning in violation of R.C. 2907.07(A).

{¶ 4}   On March 30 and 31, 2015, a jury trial was held. At the end of the prosecution's case, Marcum's counsel made a Crim.R. 29 motion, asserting the prosecution failed to present sufficient evidence that Marcum had engaged in sexual conduct with J.M. as alleged in Counts 7 through 9 of the indictment. Neither J.M. nor the forensic interviewer who interviewed J.M. testified as to any oral to genital contact between J.M. and Marcum. As such, the trial court granted the Crim.R. 29 motion regarding the sexual conduct charges

relating to J.M. and dismissed Counts 7 through 9. The defense presented its case and the remaining counts went to the jury. After deliberation, the jury found Marcum guilty of all remaining counts.

{¶ 5} At sentencing, the trial court merged the Count 4 gross sexual imposition, the Count 5 gross sexual imposition, and the Count 6 importuning charges with the Count 3 sexual battery charge, relating to R.C. The trial court also merged the Count 11 gross sexual imposition and the Count 12 importuning charges with the Count 10 gross sexual imposition charge, relating to J.M. The trial court did not merge the rape and sexual battery charges relating to R.C. contained in Counts 1, 2, and 3. The sentencing entry provides that Marcum was sentenced upon the Counts 1 and 2 rape charges, the Count 3 sexual battery charge, and the Count 10 gross sexual imposition charge. In addition, despite its order that the Count 4 gross sexual imposition charge had merged into Count 3, the sentencing entry imposed a separate sentence upon Count 4. Specifically, the trial court sentenced Marcum to 15 years to life in prison on Count 1, 25 years to life in prison on Count 2, 8 years in prison on Count 3, 5 years in prison on Count 4, and 5 years in prison on Count 10. All sentences were ordered to be served concurrently with one another.

{¶ 6} Marcum now appeals, asserting two assignments of error for review.

{¶ 7} Assignment of Error No. 1:

{¶ 8} A REASONABLE JURY COULD NOT REACH A VERDICT OF GUILTY BEYOND A REASONABLE DOUBT.

{¶ 9} In his first assignment of error, Marcum argues his convictions were against the manifest weight of the evidence and the jury clearly lost its way because the child victims' testimony lacked the specificity necessary to identify distinguishable incidents of sexual conduct or sexual contact initiated by Marcum.

{¶ 10} Considering whether a conviction is against the manifest weight of the evidence

a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). When reviewing a jury verdict, the verdict may be reversed as against the manifest weight of the evidence only when there is unanimous disagreement with the verdict. *State v. Gibbs*, 134 Ohio App.3d 247, 255 (12th Dist.1999). "In either a criminal or civil case the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶ 11} Child victims are not expected to remember the exact dates of when psychologically traumatic abuse occurred, especially when abuse is spread over an extended period of time. *State v. Rogers*, 12th Dist. Butler No. CA2006-03-055, 2007-Ohio-1890, ¶ 25. Furthermore, charges involving sexual conduct or sexual contact may be proven solely through witness testimony. *In re D.T.W.*, 12th Dist. Butler No. CA2014-09-198, 2015-Ohio-2317, fn. 1; *State v. Flores*, 11th Dist. Lake No. 2004-L-030, 2005-Ohio-5277, ¶ 43-44.

{¶ 12} In asserting his convictions were against the manifest weight of the evidence, Marcum relies on *State v. Warren*, 168 Ohio App.3d 288, 2006-Ohio-4104 (8th Dist.), where the Eighth District found multiple convictions of rape were not supported by the evidence because the victim did not present specific details of individual, multiple rapes and only testified that she was raped eight or nine times. In line with *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005), the Eighth District held that it could not "accept the numerical estimate which is unconnected to individual, distinguishable incidents." *Warren* at ¶ 20. However, while the victim's testimony did not support multiple counts of rape, the Eighth District found the testimony of the victim was sufficient to support one count of rape. *Id.* at ¶ 19. Unlike in *Warren*, Marcum was not charged with committing separate acts constituting multiple

offenses, but was rather charged with the offenses in the alternative.

{¶ 13} Marcum was convicted of rape involving R.C. in violation of R.C. 2907.02(A)(1)(b) and 2907.02(A)(2) which provide:

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> * * *
>
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
>
> * * *
>
> (2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

{¶ 14} Marcum was also convicted of sexual battery involving R.C. pursuant to R.C. 2907.03(A)(5) which provides:

> (A)  No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
>
> * * *
>
> (5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.

{¶ 15} Rape and sexual battery each require that the offender engage in "sexual conduct" with the victim.  However, the above sections differ depending upon the means used to commit the offense (i.e., force or threat of force), the age of the victim (i.e., less than thirteen years of age), or the status of the offender (i.e., parent or stepparent of the victim).

{¶ 16} Marcum was also convicted of two counts of gross sexual imposition involving each victim pursuant to R.C. 2907.05(A)(1) and (4).  Gross sexual imposition differs from rape in that it involves "sexual contact" as opposed to "sexual conduct."  These sections

otherwise mirror the "force or threat of force" and age of the victim elements of rape in R.C. 2907.02(A)(1)(b) and (2), respectively, and are differentiated in the same respect as set forth in the discussion involving the rape convictions above.

{¶ 17} Finally, Marcum was convicted of importuning in violation of R.C. 2907.07(A), which provides:

> No person shall solicit a person who is less than thirteen years of age to engage in sexual activity with the offender, whether or not the offender knows the age of such person.

This section involves a solicitation to engage in "sexual activity" which may be "sexual conduct or sexual contact, or both." R.C. 2907.01(C).

{¶ 18} The rape charges relating to R.C. alleged a single offense. However, the rape of R.C. was alternatively charged in separate counts based upon the fact that R.C. was less than thirteen years of age at the time of the offense (Count 1), and because Marcum used force or threat of force in the commission of the offense (Count 2). The sexual battery charge relating to R.C. was also an alternative charge to the rape counts but was based upon Marcum having the status of R.C.'s stepparent. Similarly, the gross sexual imposition charges involved a single offense with each child, alternatively charged and differentiated by the fact that R.C. and J.M. were less than thirteen years of age at the time of the offense (Count 5 as to R.C. and Count 11 as to J.M.) and because Marcum used force or threat of force in the commission of the offenses (Count 4 as to R.C. and Count 10 as to J.M.). Finally, the importuning charges also involved the same conduct as the rapes and sexual battery charges involving R.C. and the gross sexual imposition charges involving both children, but were based upon Marcum's solicitation of the children to engage in the sexual activity.

{¶ 19} In this instance, the testimony of the victims supported the jury's guilty verdict. R.C. testified that Marcum made him "suck [Marcum's] penis" on more than one occasion in

Marcum's bedroom during the time he lived with Marcum. R.C. also testified Marcum made R.C. and J.M. watch movies about sex and play with their penises. R.C. testified Marcum threatened to hurt them or someone they cared about if they ever told anyone. J.M. testified Marcum made him lie down on the bed and play with Marcum's penis using his hands. J.M. testified that it was "mushy," "like if you're touching slim or something." J.M. testified this happened on more than one occasion. J.M. also testified Marcum would throw him across the room and spank him.

{¶ 20} The victims' testimony was supported by two different experts in forensic interviewing who agreed the children gave a detailed history of inappropriate sexual behavior. J.M.'s foster father and R.C.'s stepmother testified to the boys' demeanor when talking about Marcum and confirmed the boys had been living separate and apart from each other for more than a year when the allegations of abuse surfaced. Additionally, Marcum recalled telling his brother that "it could have happened, it might have f'ing happened," and he did not think the boys would lie about abuse. In light of the foregoing, we find the jury did not clearly lose its way and Marcum's convictions were not against the manifest weight of the evidence.

{¶ 21} While we find the lack of specificity regarding multiple instances of abuse did not render Marcum's convictions against the manifest weight of the evidence, we find the trial court erred when it did not merge the rape and sexual battery charges relating to R.C. When a failure to merge allied offenses is obvious, it rises to the level of plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 14; *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31. This is true whether sentences are imposed consecutively or concurrently. *Underwood* at ¶ 31.

{¶ 22} Pursuant to R.C. 2941.25, Ohio's multiple-count statute, the imposition of multiple punishments for the same criminal conduct is prohibited. *State v. Brown*, 186 Ohio App.3d 437, 2010-Ohio-324, ¶ 7 (12th Dist.). Specifically, R.C. 2941.25 states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

As R.C. 2941.25(A)'s mandate is a protection against multiple sentences, a defendant is not convicted for purposes of this statute until a sentence is imposed. *Rogers* at ¶ 18.

{¶ 23} In order to determine which offenses are of dissimilar import that cannot be merged, the Ohio Supreme Court recently clarified the test to employ in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995. When conducting the analysis, if any of the following is true, a defendant may be convicted and sentenced for multiple offenses as the offenses cannot merge: (1) the offenses are of dissimilar import with separate, identifiable harm, (2) the offenses were separately committed, or (3) a separate animus or motivation was used to commit the offenses. *Ruff* at ¶ 25. Two or more offenses of dissimilar import exist "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23.

{¶ 24} In this instance, it is obvious that the rape and sexual battery charges related to R.C. are allied offenses. As discussed above, these offenses were charged in the alternative, and as argued by Marcum, there were not specific instances of multiple sexual conduct testified to by R.C. The indictment and bill of particulars rely on the same conduct for Counts 1 through 3. There was no distinguishing evidence presented at trial to establish that the offenses were separately committed, resulted in separate identifiable harm, or were committed with a separate motivation in order to be of dissimilar import. As the sexual conduct offenses related to R.C. are clearly allied, Marcum's multiple sentences for the rape

and sexual battery offenses violate R.C. 2941.25(A).

{¶ 25} We find the trial court committed plain error by failing to merge Counts 1 through 3. As such, the sentence must be vacated and the matter remanded for resentencing. Upon remand, the state can elect which allied offense to pursue, which the trial court must accept and then merge for resentencing.

{¶ 26} Furthermore, we note the trial court stated in the body of the sentencing entry that "Counts 4, 5 and 6 merge with Count 3 for purposes of sentencing," yet imposed a separate sentence for Count 4. As a trial court speaks through its entries, upon remand for resentencing, the trial court must address this inconsistency. Marcum's first assignment of error is sustained in part and overruled in part.

{¶ 27} Assignment of Error No. 2:

{¶ 28} THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL FAILED TO REQUEST A HEARING ON THE ADMISSIBILITY OF A POLYGRAPH EXAM RESULTS.

{¶ 29} In his second assignment of error, Marcum argues his trial counsel was ineffective for failing to request the introduction of results of a computerized voice stress analyzer (CVSA) given by a police officer to Marcum and by failing to question the officer at trial.

{¶ 30} To establish ineffective assistance of counsel, a defendant must show his trial counsel's performance was both deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989). With respect to deficiency, appellant must show his counsel's performance "fell below an objective standard of reasonableness." *Strickland* at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and as a result, "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

{¶ 31} Previously, we analogized the admissibility of the results of a CVSA with results of a polygraph test. *State v. Homer*, 12th Dist. Warren No. CA2003-12-117, 2006-Ohio-1432, ¶ 7. Regarding admissibility, the results of a polygraph test cannot be admitted simply at an accused's request. *State v. Bell*, 12th Dist. Clermont No. CA2008-05-044, 2009-Ohio-2335, ¶ 47. Rather, there *must* be a written stipulation between the prosecuting attorney, the defendant's counsel, and the defendant providing that the polygraph results are admissible. *State v. Souel*, 53 Ohio St.2d 123 (1978), paragraph two of the syllabus. Even if there is such a stipulation, the admissibility of polygraph results rests within the discretion of the trial court. *Id.* at paragraph three of the syllabus.

{¶ 32} In this instance, there was no stipulation between the prosecution and the defense allowing the admission of the CVSA's results. Additionally, it was unnecessary for Marcum's attorney to separately seek the admission of the CVSA results because the issue of its admissibility was before the court upon the prosecuting attorney's motion in limine to exclude the CVSA's results, which Marcum's attorney opposed. Furthermore, Marcum's counsel preserved the record for appeal by proffering the CVSA's results at trial. The conduct of Marcum's attorney did not fall below a professional standard of reasonableness, and was thus not ineffective. Marcum's second assignment of error is overruled.

{¶ 33} Judgment affirmed in part and reversed only to the extent the sentence is vacated, and the matter is remanded for resentencing.

RINGLAND and HENDRICKSON, JJ., concur.