[Cite as *State v. Cunningham*, 2012-Ohio-2333.]

IN THE COURT OF APPEALS OF CLARK COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 11CA0032 |
| vs. | : | T.C. CASE NO. 11CR0019 |
| EDWARD CUNNINGHAM | : | (Criminal Appeal from Common Pleas Court) |
| Defendant-Appellant | : | |

. . . . . . . . .

## O P I N I O N

Rendered on the 25th day of May, 2012.

. . . . . . . . .

Andrew Wilson, Pros. Attorney; Lisa M. Fannin, Asst. Pros. Attorney, Atty. Reg. No. 0082337, 50 E. Columbia Street, 4th Floor, P.O. Box 1608, Springfield, OH 45501
        Attorneys for Plaintiff-Appellee

Carl D. Sherrets, Atty. Reg. No. 0040621, 580 Lincoln Park Blvd., Suite 399, Kettering, OH 45429
        Attorney for Defendant-Appellant

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant punched Jamie Wilson, his live-in girlfriend, with whom he has two children, in the head and then slammed her head and arm into a gas meter, causing her physical harm. Defendant was indicted on one count of domestic violence, R.C. 2919.25(A), which is a felony of the fourth degree because Defendant has a previous conviction for

domestic violence, and one count of felonious assault, R.C. 2903.11(A)(1), a felony of the second degree. Following a jury trial, Defendant was found guilty of domestic violence but not guilty of felonious assault. The trial court sentenced Defendant to an eighteen month prison term, the maximum sentence for a felony of the fourth degree.

{¶ 2} Defendant timely appealed to this court from his conviction and sentence. Defendant's appellate counsel filed an *Anders* brief, *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 19 L.Ed.2d 493 (1967), stating that he could find no meritorious issues for appellate review. We notified Defendant of his appellate counsel's representations and afforded him ample time to file a pro se brief. None has been received. This case is now before us for our independent review of the record. *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988).

{¶ 3} Defendant's appellate counsel has identified four possible issues for appeal, the first of which is:

FIRST POTENTIAL ASSIGNMENT OF ERROR

{¶ 4} "THE APPELLANT WAS RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL."

{¶ 5} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arose from counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must affirmatively demonstrate to a reasonable probability that were it not for counsel's errors, the result of the

trial would have been different. *Id.*, *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

**{¶ 6}** Defendant argues that his trial counsel performed deficiently by failing to timely object to Dr. Erhardt's testimony regarding the cause of the victim's facial injuries. Dr. Erhardt was the emergency room physician who treated Jamie Wilson at the hospital. Dr. Erhardt testified that Wilson initially reported that her injuries were the result of a fall. Dr. Erhardt further testified that he questioned Wilson's explanation because, in his professional opinion, Wilson's facial injuries were the result of being battered by a closed fist. At that point defense counsel objected because Dr. Erhardt, an expert witness, had not prepared a written report summarizing his findings and conclusions as to the cause of Wilson's injuries, nor had any such report been provided to defense counsel at least twenty-one days prior to trial, which violates Crim.R. 16(K). The trial court sustained defense counsel's objection and instructed the jury to disregard Dr. Erhardt's testimony regarding the cause of Wilson's facial injuries.

**{¶ 7}** No deficient performance by defense counsel is demonstrated. Defense counsel timely objected to the testimony by Dr. Erhardt regarding the cause of Wilson's facial injuries, and the trial court sustained Defendant's objection and instructed the jury to disregard that testimony by Dr. Erhardt. It is presumed that jurors follow the court's instructions. *Pang v. Minch*, 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990); *State v. Ritchie*, 2d Dist. Montgomery No. 15792, 1997 WL 435698 (July 25, 1997). This claim lacks arguable merit.

**{¶ 8}** Defendant further argues that his trial counsel performed deficiently by failing to cross-examine the victim, Jamie Wilson, after the State had recalled Wilson to the stand at

the close of its case. The State recalled Jamie Wilson to testify regarding the written statement she gave to police at the hospital. The record reflects that the jury was not present for this part of the proceedings. Wilson testified that she was unable to write out the statement herself due to her injuries, and that she told her sister-in-law what to say and she wrote out the statement. Wilson read the written statement aloud and authenticated the accuracy of its contents. Evid.R. 901(A). Under those circumstances, no deficient performance arose from defense counsel's decision not to question Wilson about her written statement, much less any resulting prejudice as defined by *Strickland*. Defendant faults defense counsel for not questioning Wilson about what facts were missing from her written statement after Wilson indicated that there were additional facts that were not included. Without knowing what those additional missing facts were and whether they were incriminating and prejudicial to Defendant's case, counsel's strategy in not asking about them was most reasonable. No deficient performance by defense counsel has been demonstrated. This claim of ineffective assistance of counsel lacks arguable merit.

SECOND POTENTIAL ASSIGNMENT OF ERROR

{¶ 9} "THE EVIDENCE WAS INSUFFICIENT TO PROVE A CHARGE OF DOMESTIC VIOLENCE BECAUSE THE STATE FAILED TO PROVE THE ALLEGED VICTIM WAS A FAMILY OR HOUSEHOLD MEMBER."

{¶ 10} Defendant argues that his conviction for domestic violence is not supported by legally sufficient evidence because the State failed to prove that the victim, Jamie Wilson, was a family or household member.

{¶ 11} In *State v. Haggerty*, 2d Dist. Montgomery No. 24405, 2011-Ohio-6705 at ¶20-21, we wrote:

A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. *State v. Thompkins,* (1997), 78 Ohio St.3d 380. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶ 12} Defendant was found guilty of domestic violence in violation of R.C. 2919.25(A), which provides:

No person shall knowingly cause or attempt to cause physical harm to a family or household member.

{¶ 13} Pursuant to R.C. 2919.25(F)(1), "family or household member" means:

(a) Any of the following who is residing or has resided with the offender:

(i) A spouse, a person living as a spouse, or a former spouse of the offender;

(ii) A parent, a foster parent, or a child of the offender, or another person related by consanguinity or affinity to the offender;

(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.

(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.

(F)(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.

{¶ 14} The victim, Jamie Wilson, testified at trial that Defendant has lived with her and her two children the past four years at 358 Lincoln Park Circle in Springfield, Ohio, and that Defendant is the father of her four year old daughter and her one year old son. That evidence, if believed, is sufficient to prove that Jamie Wilson is a "family or household member" for purposes of the domestic violence statute. R.C. 2919.25(F)(1) and (2). The credibility of the witnesses and the weight to be given to their testimony, are matters for the trier of facts, the jury here, to decide. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). This claim lacks arguable merit.

THIRD POTENTIAL ASSIGNMENT OF ERROR

{¶ 15} "THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 16} Defendant argues that his conviction for domestic violence is against the manifest weight of the evidence because the jury lost its way in choosing to believe the testimony of the State's witnesses, particularly the victim, Jamie Wilson. Defendant contends that Wilson's testimony is not believable, that her conduct and actions were inconsistent with that of an assault victim, that she initially lied to police about the cause of her injuries, and that the defense witnesses contradict the State's evidence.

{¶ 17} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *State v. Hufnagle,* 2d Dist. Montgomery No. 15563, 1996 WL 501470 (Sept. 6, 1996). The proper test to apply to that inquiry is the one set forth in *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983):

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Accord: *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.

{¶ 18} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*. In *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997), we wrote:

Because the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the fact finder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the fact finder, who has seen and heard the witness.

{¶ 19} The jury did not lose its way merely because it chose to believe the victim and other State's witnesses, which the jury had a right to do. This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. *State v. Bradley* 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 20} Reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the trier of facts lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence. This claim lacks arguable merit.

FOURTH POTENTIAL ASSIGNMENT OF ERROR

{¶ 21} "THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION BY OVERRULING AND (SIC) OBJECTION BY THE APPELLANT'S TRIAL COUNSEL AND ALLOWING HEARSAY EVIDENCE INTO THE TRIAL."

{¶ 22} The admission or exclusion of evidence is a matter within the sound

discretion of the trial court, and its decision in such matters will not be disturbed on appeal absent an abuse of that discretion. *State v. Price*, 2d Dist. Montgomery No. 22380, 2008-Ohio-4746.

**{¶ 23}** "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252 (1985). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

**{¶ 24}** A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment*, Corp., 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 25}** "Hearsay," which is generally not admissible subject to several exceptions set out in Evid.R. 803 and 804, is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C).

**{¶ 26}** Tiffany Argabright is a friend of the victim, Jamie Wilson, and lives across the street from Wilson. Argabright testified about Wilson coming over to her home on January 11, 2011, at 5:00 a.m., pounding on the front door and asking for help because Defendant had beat her up. Argabright testified that Wilson was intoxicated, was upset and crying, her

clothes were soaking wet, and her arm was bleeding and very swollen. On direct examination of Argabright the following exchange occurred:

Q. What did she tell you happened?

A. She said that she had been drinking. She went upstairs. She was asleep. Ed had come up there – or she heard something and she went downstairs and she seen Ed doing what he was doing.

And she went to run out the door. In the process of her running out the door, she said Ed chased her, and they got into a fight on the side of the neighbor's house. And he grabbed her by her head and tried to slam her head in the meter; and in the process of his attempting doing that, she put her arm up to block it. And that's how her arm got what it got.

MR. MARSHALL: I object and ask that to be stricken as hearsay.

THE COURT: Overruled. (Tr. 235-236).

{¶ 27} Pursuant to Evid.R. 803(2), an excited utterance is an exception to the hearsay rule. In *State v. Abner*, 2d Dist. Montgomery No. 20661, 2006-Ohio-4510 at ¶ 69, we observed:

An excited utterance is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). For a statement to be admissible as an excited utterance, four prerequisites must be satisfied: (1) the occurrence of an event startling enough to produce a nervous excitement in the declarant; (2) a statement made while still under the stress of excitement

caused by the event; (3) a statement related to the startling event; and (4) the declarant's personal observation of the startling event. *State v. Taylor* (1993), 66 Ohio St.3d 295, 300–301, 612 N.E.2d 316.

**{¶ 28}** In *Taylor*, the Ohio Supreme Court elaborated on the proper scope of appellate review of a trial court's decision to admit or reject a hearsay exception like an excited utterance:

"There may be instances in which a decision to reject such a declaration will appear to a reviewing court almost as reasonable as a decision to admit it; and vice versa. We certainly do not believe that the decision of the trial judge in such an instance should be disturbed.

" * * * [T]he trial judge, in determining whether this declaration was admissible, necessarily had to decide certain questions of fact. If his decision of those questions of fact, as reflected in his ruling on the admissibility of this declaration, was a reasonable decision, an appellate court should not disturb it. In other words, we believe that the decision of the trial judge, in determining whether or not a declaration should be admissible under the spontaneous exclamations exception to the hearsay rule, should be sustained where such decision appears to be a reasonable one, even though the reviewing court, if sitting as a trial court, would have made a different decision. * * *" *Taylor,* 66 Ohio St.3d at 304–305, 612 N.E.2d 316, quoting *Potter v. Baker*, 162 Ohio St. 488, 499–500, 124 N.E.2d 140 (1955).

**{¶ 29}** The State's evidence shows that when Defendant slammed Jamie Wilson's

head into a gas meter on the outside of the house, which Wilson partly deflected with her arm, Wilson passed out and fell to the ground. Wilson laid unconscious on the ground in the snow for a period of time, and when she awoke she immediately went across the street to Argabright's home to get help. Argabright's testimony relating what Wilson said had happened meets the four prerequisites for admission as an excited utterance. First, Defendant's vicious physical assault of Jamie Wilson undoubtedly qualifies as an event startling enough to produce nervous excitement in Wilson. Second, Wilson was crying and upset and remained under the stress of excitement caused by Defendant's violent attack while relating to Argabright what had happened. Third, Wilson's statement to Argabright related to the startling event. Finally, it is obvious that as the victim of Defendant's violent attack, Wilson personally observed that startling event.

{¶ 30} Argabright's testimony relating what Jamie Wilson told her had happened qualifies as an excited utterance under Evid.R. 803(2), and the trial court did not abuse its discretion in admitting that evidence. This claim lacks arguable merit.

{¶ 31} In addition to reviewing the possible issues for appeal raised by Defendant's appellate counsel, we have conducted an independent review of the trial court's proceedings and find no error having arguable merit. Accordingly, Defendant's appeal is without merit and the judgment of the trial court will be affirmed.

DONOVAN, J., And HALL, J., concur.

Copies mailed to:

Lisa M. Fannin, Esq.
Carl D. Sherrets, Esq.
Edward Cunningham
Hon. Douglas M. Rastatter